# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JUSTIN S.,[1]

                                        Plaintiff,

        v.                                   5:20-CV-1575(ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                       Defendant.

---

JUSTIN M. GOLDSTEIN, ESQ., for Plaintiff
CANDACE LAWRENCE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5).

## I. __PROCEDURAL HISTORY__

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on or about January 27, 2017, alleging disability beginning October 1, 2016. (Administrative Transcript ("T") at 71, 159-65). His application was denied initially on May 23, 2017. (T. 71, 91-102). At the request of the plaintiff, Administrative Law Judge ("ALJ")

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

Kenneth Theurer conducted a hearing on October 19, 2018, at which plaintiff and vocational expert ("VE") Lavonne Brent gave testimony. (T. 33-70). Immediately after the hearing, plaintiff moved to amend his alleged onset date to February 1, 2018. (T. 174). In a decision dated November 8, 2018, the ALJ found that plaintiff was not disabled (T. 10-24), and the Appeals Council denied plaintiff's request for review on June 25, 2019 (T. 1-6). Plaintiff commenced an action challenging the decision in the Northern District of New York. *Justin S. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1055 (ATB). The parties stipulated to a remand, and a stipulation and order of remand was entered by this court on April 30, 2020. (T. 855-65). In the interim, plaintiff filed a subsequent claim for disability benefits and the state agency found him disabled as of November 9, 2018. (T. 766, 859).

On June 25, 2020, the Appeals Council issued a detailed remand order, identifying the deficiencies in the November 8, 2018 decision and instructing the ALJ to take certain actions on remand. (T. 857-63). Because plaintiff was subsequently awarded benefits, the determination on remand was limited to the alleged period of disability from February 1, 2018 to November 8, 2018. ALJ Theurer once again presided over the matter, and conducted a supplemental hearing at which he procured testimony from medical expert Laura E. Hopper, Ph.D. (T. 805-22). A vocational expert appeared but did not testify. (*Id.*). On December 17, 2020, ALJ Theurer issued a decision finding that plaintiff was not disabled during the relevant period. (T. 766-84).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth

> inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was 30 years old on the date of the October 19, 2018 administrative hearing. He lived in a mobile home with his wife and two young children. (T. 39). Plaintiff had an eleventh grade education, with some additional training through BOCES. (*Id.*). He had a driver's license and could operate a vehicle. (*Id.*).

At the time of the hearing, plaintiff was "on leave" from his part-time job as a overnight dry food stocker at Walmart, due to back issues. (T. 40). He had worked for Walmart in various capacities since 2007, however testified that he had been fired, and rehired, by the company three times. (T. 40, 49–51). He formerly had a job coach. (T. 55-56). After a suicide attempt in August 2016, he was hospitalized for a little over a week. (T. 43, 52–53). Plaintiff was also in a motor vehicle accident around the same time. (T. 52). He stopped working full-time for Walmart in 2017, because his

schizophrenia was "getting too bad" and he "couldn't handle it." (T. 42). Plaintiff

testified that his depression, schizophrenia, and back condition prevented him from

working. (T. 43). He could not handle social interactions at work, and referenced

having had "plenty of breakdowns" on the job. (T. 49). Plaintiff took medication for

his psychiatric symptoms, including an anti-psychotic injectable. (T. 51–52).

Plaintiff testified that he slept most days and played games on his phone. (T.

46–48). He took care of his young children when his wife was at her part-time job. (T.

46–47). Once a month plaintiff went to the grocery store by himself, which was

"sometimes" difficult for him. (T. 57).

At the December 2, 2020 supplemental hearing, Dr. Laura Hopper testified as to

her review of the medical records in evidence, relative to the February 1, 2018 through

November 8, 2018 period of alleged disability. (T. 814–22). There is a substantial

amount of other medical evidence in the administrative record, which the parties have

summarized in their briefs. Rather than reciting this evidence at the outset, I will

discuss the relevant material in my analysis of plaintiff's claims.

## IV.   THE ALJ'S DECISION

In his December 17, 2020 decision, the ALJ first found that plaintiff had not

engaged in substantial gainful activity from February 1, 2018 through November 8,

2018. (T. 769). Next, the ALJ found that plaintiff had the following severe

impairments: degenerative disc disease of the lumbar spine; depression; and

schizophrenia. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments

did not meet or medically equal the criteria of any listed impairments in Appendix 1 to

20 C.F.R. Part 404, Subpart P.  (T. 769-70).

At step four, the ALJ found that plaintiff had the residual functional capacity to perform light work, except that plaintiff had the following additional limitations:

> he could sit for up to six hours, and stand or walk for approximately six hours, in an eight-hour day, with normal breaks; he could occasionally climb ramps or stairs; he was unable to climb ladders, ropes or scaffolds; and, he could perform occasional balancing, stooping, kneeling, crouching, and crawling.  The [plaintiff] retained the ability to: understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; and regularly attend to a routine and maintain a schedule.  He could relate to and interact with others to the extent necessary to carry out simple tasks, but needed to avoid work requiring more complex interaction or joint effort to achieve work goals.  The [plaintiff] could tolerate no more than occasional contact with coworkers and supervisors, and he needed to have no more than incidental contact with the public.  The [plaintiff] could handle reasonable levels of simple work-related stress, in that he could make occasional simple decisions, directly related to the completion of his tasks, in a stable, unchanging work environment.[2]

(T. 771-72).

Next, the ALJ determined that plaintiff had no past relevant work, was a younger individual, and had a limited education.  (T. 777).  However, relying on the testimony of VE Brent, who appeared at the October 19, 2018 administrative hearing, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 777-79).  Accordingly, the ALJ determined that

---

[2]The ALJ defined incidental as "more than never and less than occasional; simply put, the job should not involve direct interaction with the public, but the person does not need to be isolated away from the public."  (T. 772).

plaintiff was not disabled from February 1, 2018 through November 8, 2018.  (T. 779).

## V.   <u>ISSUES IN CONTENTION</u>

Plaintiff argues that the ALJ failed to follow the remand order issued by the Appeals Council in (1) ordering a new medical expert opinion instead of recontacting prior examining and treating sources, and (2) improperly evaluating the medical opinions of record.  (Plaintiff's Brief ("Pl.'s Br.") at 10–25) (Dkt. No. 12).  Defendant argues that the ALJ's actions were not inconsistent with the Appeals Council's remand instructions, and that the ALJ properly evaluated the opinion evidence, resulting in an RFC that was supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 10–25) (Dkt. No. 15).  For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI.   <u>MANDATE RULE</u>

### A.   **Legal Standards**

There are two "branches" of the law-of-the-case doctrine. One branch is a nonbinding doctrine that "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

8

"The doctrine's second branch is the nondiscretionary 'mandate rule,' which flows from the hierarchical decision-making systems it concerns." *Frank K. v. Comm'r of Soc. Sec.,* 371 F. Supp. 3d 163, 170 (D. Vt. 2019) (citing *In re Coudert Bros. LLP*, 809 F.3d 94, 101 n.2 (2d Cir. 2015)). Under the mandate rule, "where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014).

There is an "administrative version" of the mandate rule contained in the applicable SSA regulations, which provides that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b). Accordingly, reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand. *See Dommes v. Colvin*, No. 3:15-CV-977 (GTS), 2016 WL 7104900, at *4-5 (N.D.N.Y. Dec. 6, 2016) (remanding for calculation of benefits based on ALJ's failure to comply with District Court order and Appeals Council's remand order to follow treating physician rule); *Mortise v. Astrue*, 713 F. Supp. 2d 111, 123-24 (N.D.N.Y. 2010) (remanding based on the ALJ's failure to comply with the Appeals Council's remand order to follow the treating physician rule); *Gorman v. Astrue*, No. 08-CV-0251(NAM), 2009 WL

4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (ALJ's failure to comply with the Appeals Council's remand order was error worthy of remand).

However, where an issue is not "'precluded by remand order or the judgment of the court in the prior judicial review, that issue may be decided differently . . . on remand if the Commissioner applies the correct legal standard and substantial evidence in the record as a whole supports the decision.'"  *Gusky v. Astrue*, 954 F. Supp. 2d 180, 190 (W.D.N.Y. 2013) (quoting *Thompson v. Astrue*, 583 F. Supp. 2d 472, 475 (S.D.N.Y. 2008) (quoting *Lucas v. Astrue*, No. 07-2143, 2008 WL 474286, at *4 (D. Kan. Jan. 29, 2008)).  *See also Marvin v. Colvin*, No. 3:15-CV-74(GLS/CFH), 2016 WL 2968051, at *2 (N.D.N.Y. May 20, 2016) (in the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for benefits) (citing *Thompson*, 583 F. Supp. 2d at 475).

### B.    Application

Plaintiff argues that the ALJ's request for a medical expert's opinion was inconsistent with the Appeals Council's remand order.  (Pl.'s Br. at 12).  Although plaintiff concedes that the remand order did not *prevent* the ALJ from obtaining a new medical opinion, he contends that the ALJ was "first required to request clarification from the authors of the existing medical opinions, which was not done."  (*Id.*).  For the following reasons, the court disagrees that the ALJ's actions impermissibly exceeded the scope of the June 2020 remand order.

In its remand order, the Appeals Council first identified the deficiencies contained in ALJ Theurer's November 8, 2018 decision.  This included the ALJ's insufficient evaluation of NP Dowling's opinion, along with his failure to consider NP Dowling's documented clinical findings in weighing the opinion.  (T. 859–60).  The Appeals Council also found that the ALJ failed to adequately consider the requisite regulatory factors, such as consistency with the record as a whole, in affording Dr. Noia's opinion "great weight."  (T. 860).  The Appeals Council concluded that "Further evaluation of opinion evidence and the [plaintiff's] maximum [RFC] is needed."  (*Id.*).

The remaining, relevant portions of the Appeals Council's remand order state as follows:

> Upon remand, the [ALJ] will:
>
> •   Give further consideration to the [plaintiff's] maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations [ ].  In so doing, evaluate the treating and non-treating source opinions . . . and explain the weight given to such opinion evidence.  *As appropriate, the [ALJ] may request the treating and non-treating sources provide additional evidence and/or further clarification of their opinions and medical source statements about what the [plaintiff] can still do despite the impairments [ ].*
>
> . . .
>
> *In compliance with the above, the [ALJ] will offer the [plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision[.]*

11

(*Id.*) (emphasis added).

At base, the remand order required the ALJ to give further consideration to plaintiff's RFC, and cite to specific evidence of record in support of his assessed limitations.  The ALJ was also specifically instructed to re-evaluate the existing opinion evidence of record, and explain the weight afforded to each.  However, the court is not persuaded that the language of the remand order required the ALJ to recontact these sources before "taking any further action needed to complete the administrative record" – i.e. request an updated medical opinion.  The Appeals Council's order clearly gave the ALJ discretion to recontact the existing medical sources as he deemed necessary to properly evaluate the opinion evidence and plaintiff's RFC, as evidenced by use of the terms "as appropriate," and "may."  *See James C. v. Comm'r of Soc. Sec.,* No. 5:19-CV-1206 (TWD), 2020 WL 6445907, at *7 (N.D.N.Y. Nov. 3, 2020) ([T]he Appeals Council's remand order qualifies its directions to the ALJ through the use of terms such as '[i]f necessary," and 'if warranted.' [ ] Therefore, the bulk of the Appeals Council's directions merely call for [the ALJ] to exercise her discretion regarding evaluation of the opinion and other evidence and the development of the record, so long as she complied with the applicable regulations.").

Plaintiff specifically argues that the ALJ should have recontacted NP Dowling, in light of the ALJ's reasoning that "Nurse Dowling offered little explanation in support

of his conclusions." (Pl.'s Br. at 13). However, the ALJ also noted that NP Dowling was not an acceptable medical source, and that his restrictive limitations were markedly inconsistent with his treatment records during the relevant period of alleged disability. (T. 776). In any event, the court finds no error in the ALJ's discretionary decision to not recontact NP Dowling, who was not an acceptable medical source under the applicable regulations, and instead seek a opinion from an acceptable medical source, Dr. Hopper. *See Curley v. Comm'r of Soc. Sec. Admin.,* 808 F. App'x 41, 44 (2d Cir. 2020) (rejecting argument that ALJ should have obtained medical opinion from plaintiff's treating provider where plaintiff's "only treating provider during the relevant time period was a nurse practitioner and thus was not an acceptable medical source for such an opinion" under the applicable regulations).

Moreover, and as the Commissioner points out, it was not unreasonable nor improper for the ALJ to request an updated medical opinion, considering that NP Dowling's opinion was the only one rendered during the applicable period of disability. *See* 20 C.F.R. §§ 404.1527(e); 404.1513a(b)(2) ("Administrative law judges may also ask for medical evidence from expert medical sources. Administrative law judges will consider this evidence under [the medical-opinion-evaluation regulation applicable to the claimant's DIB or SSI claim based on the application filing date] as appropriate."); *Cur v. Comm'r of Soc. Sec.*, No. 19-CV-01039, 2020 WL 6488741, at *6 (W.D.N.Y. Nov. 4, 2020)("An ALJ may properly request and consider the opinion of a medical

advisor on the nature and severity of a claimant's alleged impairments."). Obtaining an opinion from Dr. Hopper was not inconsistent with the Appeals Council's remand order, which explicitly authorized the ALJ to "take any further action needed to complete the administrative record." (T. 860). Accordingly, remand is not warranted on the basis that the ALJ failed to comply with the Appeals Council's instructions, and the court will proceed to determine whether the ALJ properly weighed the opinion evidence before him on remand.

## VII. RFC EVALUATION/TREATING PHYSICIAN

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL

374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" of the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." In *Estrella v. Berryhill*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence[.]" *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019)

(quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9ᵗʰ Cir. 2014)).

If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Estrella*, 925 F.3d at 96.  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed[.]"  *Id.*

## B.    Application

The remainder of plaintiff's contentions challenge the ALJ's re-evaluation of the mental opinion evidence of record, particularly the ALJ's failure to afford controlling weight to NP Dowling's opinion, and the resulting RFC.  In addition to NP Dowling's September 4, 2018 Medical Source Statement ("MSS") (T. 760–762), the record contains the May 23, 2017 opinion of state agency consultant Hillary Tzetzo, M.D. (T. 76–77); the May 17, 2017 consultative examination report of Dennis M. Noia, Ph.D. (T. 341–44); and the August 6, 2020 medical statement of Laura Hopper, Ph.D. (T. 1008–10), along with Dr. Hopper's testimony from the supplemental administrative

hearing (T. 814–21).

In his MSS, NP Dowling indicated that he treated plaintiff "initially" on August 29, 2016, and that plaintiff was "currently . . . seen every [four to eight] weeks and receives [long-acting injectable] anti-psychotic medication every eight weeks." (T. 760).  NP Dowling identified plaintiff's diagnosis of paranoid schizophrenia, along with several of his associated symptoms including blunt, flat, or inappropriate affect; poverty of content of speech; difficulty thinking or concentrating; pathological dependence; paranoia; thinking disturbances; delusions; illogical thinking; and oddities of thought, perception, speech or behavior.  (T. 760).  With respect to plaintiff's functional limitations, NP Dowling opined that plaintiff was either unable to meet competitive standards, or had no useful ability to function, in the majority of the listed mental abilities and aptitudes needed to do unskilled work.  (T. 761).  He did not provide an explanation, or support for, these restrictive limitations, despite being prompted to do so.  (*Id.*).  NP Dowling found plaintiff to be similarly limited in the listed mental abilities and aptitudes needed to do particular types of jobs, and commented that plaintiff's "persistent ideas of reference and persecutory delusions preclude most situations involving contact with co-workers and supervisors." (T. 762). Last, NP Dowling opined that plaintiff's mental impairment and/or treatment would cause him to be absent from work more than four days per month.  (*Id.*).

The ALJ explicitly discussed NP Dowling's MSS in his decision, noting the

previously stated restrictive limitations. (T. 776). The ALJ afforded NP Dowling's opinion "some evidentiary weight," to the extent it was consistent with objective findings of record, including observations of constricted affect and psychomotor retardation. (*Id.*). However, the ALJ cited several reasons for rejecting portions of the MSS as it related to the relevant period of alleged disability. At the outset, the ALJ recognized that although NP Dowling had treated plaintiff, he was not an acceptable medical source, and therefore not a treating source entitled to controlling weight. (*Id.*). This was not an improper consideration. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("In Genier's case, many of the key medical opinions cited . . . were those of a physician's assistant and a nurse practitioner – and not a physician. As such, the ALJ was free to discount the assessments accordingly in favor of the objective findings of other medical doctors."). However, at the same time it is well recognized that "although a nurse practitioner's opinion is not entitled to the same weight as a treating physician, these opinions are entitled to some extra consideration, when the nurse practitioner has a treating relationship with the patient." *Beckers v. Colvin*, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (quotation omitted); *see also Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) (finding that the ALJ was not required to give controlling weight to the plaintiff's nurse practitioner, but should have given her opinion some consideration where the nurse practitioner was the only medical professional available to the plaintiff for long stretches of time). In this case, the ALJ did not outright reject

19

NP Dowling's opinion solely because he was not an acceptable medical source, but proceeded with his evaluation of the MSS.

Specifically, the ALJ considered that NP Dowling's opinion was inconsistent with plaintiff's treatment history as it pertained to the relevant period of disability. (T. 776). *See, e.g., Ross v. Colvin*, No. 6:13-CV-00755 (NAM), 2014 WL 5410327, at *17 (N.D.N.Y. Oct. 21, 2014) (nurse practitioner's opinion was "entitled to lesser weight" because it was "inconsistent with the record as a whole"). He also observed that NP Dowling's own treatment records documented a generally "positive response to mental health treatment," and did not support the restrictive limitations identified. (T. 776). To plaintiff's point, the ALJ could have engaged in a more in-depth analysis of the specific treatment records he believed to undermine NP Dowling's opinion. However, the ALJ did engage in this analysis, to some extent, elsewhere in his decision (T. 774), and the evidence of record allows the court to glean the ALJ's rationale on this issue.

In particular, the record reflects that in November 2017, plaintiff began receiving injections of the anti-psychotic medication, Aristada. (T. 425–26). As of February 13, 2018, he had received his third dose of the drug, and a "mini-mental status" examination performed by NP Dowling revealed that plaintiff's affect was "much more spontaneous and congruent," and that although plaintiff was "dressed inappropriately" for the weather, his mood was improved and he displayed little depression or anxiety. (T. 417). Plaintiff's "thinking appear[ed] spontaneous," and although his "insight

20

remain[ed] limited," he exhibited "No psychomotor retardation or agitations," and "den[ied] paranoid ideas or hallucinations." (*Id.*). NP Dowling noted that plaintiff's "posture and gait [were] unremarkable," and his "speech [ ] spontaneous[.]" (T. 418). Plaintiff spoke "clearly." (*Id.*). Plaintiff was noted to be taking his medications as prescribed, with no reported side effects. (*Id.*).

Plaintiff presented for therapy and/or medical management visits on an approximate monthly basis throughout the relevant period of alleged disability, with consistently similar mental examination results. On March 13, 2018, he denied hearing voices, and reported less paranoia. (T. 412). On April 30, 2018, plaintiff presented for his next injection. (T. 407). He was alert and oriented, reporting paranoia and a lack of energy. (*Id.*). He denied hallucinations. (*Id.*).

On May 15, 2018, plaintiff reported that his marital relationship was "going good," and he was sleeping eight to nine hours a day and had more energy. (T. 402). He displayed an improved mood, little depression or anxiety, and denied paranoid ideas or hallucinations. (*Id.*). Plaintiff returned for another injection on June 15, 2018. (T. 400). He was alert and oriented and denied hallucinations, but mentioned an increase in symptoms when he "forgets to come in." (*Id.*). It was noted that plaintiff was not reliable to scheduled appointments, and "could experience more effective symptom control . . . through regular attendance to medication appointments." (T. 397). Nevertheless, plaintiff reported feeling "better on the injection than when he was off the

medication." (T. 398).

On July 26, 2016, plaintiff presented for his next injection. (T. 395). He was alert and oriented, and reported visual hallucinations that generally began before his next dose of medication was due. (*Id.*). On August 15, 2018, he was reported to have some obsessive worries about either himself or others having a car accident. However, plaintiff was able to handle a verbal exercise addressing these worries, "indicating further improvement." (T. 390). Plaintiff clarified that he no longer had paranoid thoughts that people were going to kill him. (*Id.*). His affect was spontaneous and congruent, mood improved, and he displayed little depression or anxiety. (*Id.*). His insight remained limited, but thinking was spontaneous, and he denied paranoid ideas or hallucinations. (*Id.*). Plaintiff's speech was spontaneous and he spoke quite clearly. (*Id.*).

Plaintiff received his next injection on September 7, 2018, and was noted to be alert and oriented, tolerating the procedure without incident. (T. 1320-21). On September 25, 2018, plaintiff was noted to be "more verbal in sessions," but "still difficult to engage at times." (T. 1318). Plaintiff reported that his daughter was his greatest accomplishment in life, and that she put him in a better mood. (*Id.*).

On October 19, 2018, plaintiff received his next injection. (T. 1309–10). He inquired about medication for attention deficit hyperactivity disorder, and reported difficulty with concentration and attention, especially when driving. (T. 1312). He also

reported being nervous for a disability hearing, and hearing voices telling him to "hit [his] lawyer." (T. 1312).  Nevertheless, his mini-mental status exam revealed an improved mood with little depression or anxiety, spontaneous thinking with limited insight, the absence of paranoid ideas or hallucinations, and spontaneous and clear speech.  (*Id.*).

In sum, although NP Dowling's treatment records indicate some ongoing mental health symptoms, a review of the medical record shows that the ALJ's evaluation of the nurse practitioner's opinion was supported by substantial evidence.  The parties do not dispute that plaintiff had a "severe" mental impairment that diminished his capacity for daily functioning.  However, the ALJ found that NP Dowling's treatment notes did not support the extreme limitations identified in his MSS.  This was a proper basis for the ALJ to discount the opinion of a treating source opinion, and as noted above, there was "more than a mere scintilla" of evidence that supported the ALJ's finding in this regard.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *see also Domm v. Colvin,* 579 F. App'x 27, 28 (2d Cir. 2014) (ALJ may discount the opinion of a treating physician when the opinion is internally inconsistent with his own treatment notes, other medical evidence in the record, and the plaintiff's testimony) .

As for the remaining opinion evidence of record, the ALJ appropriately discussed his reasons for the weight afforded to each.  Of particular relevance was the medical statement prepared by Dr. Hopper, the only acceptable medical source who issued an

23

opinion specific to the relevant period of alleged disability.  Upon review of plaintiff's

medical records, Dr. Hopper indicated that plaintiff had no limitations understanding,

remembering, or carrying out simple instructions; or with the ability to make judgments

on simple work related decisions.  (T. 1008).  She opined that plaintiff had mild

limitations for understanding and remembering complex instructions, carrying out

complex instructions, and in his ability to make judgements on complex work-related

decisions.  (*Id.*).  She opined that there was no indication of difficulties interacting with

others, and that plaintiff exhibited "mild concentration difficulties."  (T. 1009).  Dr.

Hopper cited to specific treatment records in evidence as support for her assessment.

(T. 1008-09).

      Dr. Hopper was apparently provided an expanded record after she prepared her

medical statement, prior to the supplemental hearing.  (T. 816).  At the hearing, she

assessed plaintiff to have somewhat greater mental limitations.  Dr. Hopper noted that

objective findings concerning cognitive slowing and perceived paranoia set forth in the

expanded record supported greater, but no more than moderate, limitations in

interacting with others; the ability to concentrate, persist or maintain pace; and adapting

or managing oneself.  (T. 817–20).  She opined that plaintiff retained a mild impairment

for understanding, remembering, and applying information.  (T. 820).

      The ALJ afforded Dr. Hopper's opinion "substantial evidentiary weight," finding

it to be more consistent with the overall record.  (T. 775).  The ALJ recognized Dr.

Hopper's testimony that certain breakthrough symptoms commonly occurred as plaintiff's next injection date approached.  (T. 776).  However, he also noted Dr. Hopper's testimony that plaintiff's symptoms were reduced significantly once he received the medication, indicating a moderate degree of impairment.  (*Id.*).  He found Dr. Hopper's opinion to be supported with detailed explanation, and her hearing testimony consistent with the record as a whole.  (*Id.*).  Last, the ALJ considered that Dr. Hopper was a mental health expert well versed in agency standards and evidentiary requirements.  (*Id.*).

Plaintiff argues that the ALJ erred in giving more weight to the opinion of a non-examining agency consultant than to those of the treating and/or examining sources. However, the regulations permit the opinions of non-examining consultants like Dr. Hopper's to override the opinions of examining sources, when the former are more consistent with and supported by the evidence than the latter. *See Hancock v. Barnhart*, 308 Fed. App'x 520, 521 (2d Cir. 2009) (opinion of non-examining medical expert may be given more weight than opinion of treating physician and may constitute substantial evidence in support of ALJ determination); *see also  Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations . . . accord less deference to treating physicians whose opinions are not supported by other evidence . . . and . . . permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record." (citation omitted)); SSR 96-6p, 1996 WL 374180,

at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency . . .
consultants . . . may be entitled to greater weight than the opinions of treating or
examining sources.").

Here, the ALJ explained his decision to give greater weight to Dr. Hopper's
opinion than that of NP Dowling, and the ALJ's conclusion that Dr. Hopper's opinion
was more consistent with, and supported by, the medical evidence of record is in itself
supported by substantial evidence.  Primarily supporting the ALJ's evaluation of Dr.
Hopper's opinion are NP Dowling's own treatment records from the relevant period of
alleged disability.  These treatment records generally reflected that plaintiff's affect was
more spontaneous and congruent, his mood was improved with little depression or
anxiety, his thinking was spontaneous, he denied paranoid ideas or hallucinations, and
although his insight remained limited, he exhibited no psychomotor retardation or
agitation.  (T. 390, 403, 412–13, 417–18, 1304, 1312).  Other treatment notes from the
relevant period reflect NP Dowling's examination findings, including that plaintiff
denied depression, hallucinations, mood changes or schizophrenia (T. 553, 556, 563,
566, 573); was euthymic, alert, and fully oriented (T. 554, 557, 564, 567); had clear and
coherent speech with logical thought processes (T. 364, 367, 370, 373); and denied
symptoms such as anxiety, confusion, depression, memory loss, nervousness, racing
thoughts, or sleep disturbance (T. 366, 369, 372).

Moreover, the ALJ did not solely rely on Dr. Hopper's opinion, as the plaintiff

suggests.  In determining plaintiff's mental RFC, the ALJ conducted a comprehensive analysis of the record as a whole.  For example, the ALJ considered the opinion of Dr. Noia, who upon mental examination assessed plaintiff to have no more than mild impairments.  (T. 341–44, 776).  The ALJ afforded Dr. Noia's opinion "some evidentiary weight," because he had the benefit of examining the plaintiff and due to his benign examination findings.  (T. 776).  However, the ALJ also noted that Dr. Noia only examined plaintiff once, and that his opinion predated the period at issue.  (*Id.*). Notably, the ALJ determined that the record as a whole supported *greater* limitations than those set forth by Dr. Noia, and assessed the same in his RFC determination. Substantial evidence supports the ALJ's evaluation of Dr. Noia's opinion, and there was no error in the ALJ assessing an RFC more restrictive than the opinion of the consulting examiner.  *See McLeod v. Berryhill*, No. 1:17-CV-00262, 2018 WL 4327814, at *3 (W.D.N.Y. Sept. 11, 2018) (consultative examiner's opinion supported RFC finding, noting that " 'the fact that the ALJ's RFC assessment did not perfectly match [an examining medical source]'s opinion, and was in fact more restrictive than that opinion, is not grounds for remand.' ") (quotation omitted); *Baker v. Berryhill*, No. 1:15-CV-00943, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." (internal quotation marks and citations omitted)).

The ALJ also considered the opinion of state agency medical consultant Dr.

Tzetzo, who similarly assessed plaintiff to have, at most, mild limitations in mental functioning. (T. 76–77). The ALJ afforded Dr. Tzetzo's opinion some evidentiary weight, but recognized several reasons for rejecting portions of her opinion. He noted that Dr. Tzetzo did not have an opportunity to personally examine the plaintiff, and that her opinion predated the period at issue. (T. 777). The ALJ also cited to evidence in the record suggesting that, contrary to Dr. Tzetzo's opinion, plaintiff had problems interacting with others, along with signs of "cognitive slowing." (*Id.*). Accordingly, the ALJ concluded that greater limitations than those opined by Dr. Tzetzo were appropriate to adequately portray plaintiff's mental functioning abilities during the period at issue. (*Id.*).

Thus, contrary to plaintiff's argument, the ALJ appropriately evaluated the medical opinions of record to reach an RFC determination that was supported by substantial evidence, including the medical opinions of record, plaintiff's treatment records during the period of alleged disability, and plaintiff's testimony as to his own activities. "In other words, although the ALJ rejected some portions of the treating [provider's] opinions, the RFC is nonetheless consistent with the record as a whole." *Amanda S. v. Saul*, No. 5:18-CV-00473 (NAM), 2019 WL 3927452, at *11 (N.D.N.Y. Aug. 20, 2019) (citing *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes).

Finally, the court is not persuaded by plaintiff's argument that the mental RFC determination does not account for the moderate limitations recognized by the ALJ in his evaluation of the medical evidence. At the outset, the Second Circuit has held that moderate limitations in work related functioning do not significantly limit, and thus prevent, a plaintiff from performing unskilled work.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); *Whipple v. Astrue*, 479 Fed. App'x 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment); *see also Wells v. Colvin*, 87 F. Supp. 3d 421, 435–36 (W.D.N.Y. 2015) (finding that moderate limitations, even in the basic mental functions of unskilled work, are not inconsistent with the ability to perform unskilled work).

Moreover, this is not a case in which the ALJ simply accounted for plaintiff's moderate limitations by generally limiting him to "simple, routine work." *See, e.g.*, *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 215 (W.D.N.Y. 2014) ("When making findings about a claimant's RFC, an ALJ many not avoid conducting the 'detailed assessment' referenced in SSR 96-p 'by merely indicating that the claimant can perform, simple, unskilled work.' ").  Instead, the ALJ set forth a detailed RFC

accounting for plaintiff's limitations in understanding and memory, concentration and attention, attendance, social interaction, and the ability to handle work related stress. (T. 772). Thus, the court finds no basis for remand based on the ALJ's implementation of plaintiff's mental functional limitation into his RFC determination.

     **WHEREFORE**, based on the findings above, it is

     **ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

     **ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: February 2, 2022

Andrew T. Baxter
U.S. Magistrate Judge